UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>ROMULO A. RODRIGUES-AGUIAR,<br><br>Debtor. | Chapter 7<br><br>Case No. 15-12640 (MSH) |

**RESPONSE OF TRUSTEE TO LIMITED OBJECTION OF SOURCE ONE FINANCIAL CORPORATION TO THE TRUSTEE'S MOTION TO APPROVE SETTLEMENT AGREEMENT PURSUANT TO FED. R. BANKR. P. 9019**

John O. Desmond, Trustee ("**Trustee**") of Romulo A. Rodrigues-Aguiar ("**Debtor**") hereby responds to the Limited Objection of Source One Financial Corporation ("**Source One**") to the Trustee's Motion to Approve Settlement Agreement (the "**Settlement**") Pursuant to Fed. R. Bankr. P. 9019 to the Trustee's Settlement Motion[1], as follows:

### 1.      The Bar Order

Source One's argument that the Court lacks subject-matter jurisdiction to enter the bar order against noticed parties involving a very discrete and limited issue is without merit.  The majority of courts nationwide, including this court, has determined that a bankruptcy court has subject-matter jurisdiction to enter the type of limited bar order to noticed parties contemplated under the Settlement, and  Section 105(a) of the Code and Bankruptcy Rule 9019 provide ample statutory basis for entry of the bar order.  As Judge Panos opined in In re Grove Instruments, 573 BR 307 (Bankr. D. Mass. 2017) the concerns regarding Section 524(e) of the Code do not apply in a Chapter 7 case and, moreover, the Debtor will not receive a discharge in this case.

---

[1] Unlike the other Limited Objection filed by Paul Delory (which has since been resolved among the parties) Source One's Limited Objection is far from limited, raising three separate grounds, including that the Settlement is not in the Estate's best interest.

More specifically, as Judge Panos reasoned in <u>Grove Instruments</u>, and as this court

reasoned in <u>In re Quincy Medical Center</u>, 2011 Bankr. LEXUS 4405 (Bankr. D. Mass. 2011), the

jurisdictional limitations in the Chapter 11 plan context to approve consensual third-party

releases and injunctions are not applicable in a Chapter 7 case. Here, neither Supreme Cars, Inc.

("**Supreme**"), the Debtor's former business, its shareholders, nor any creditors of the Debtor and

Supreme, filed an objection to the Settlement or the bar order motion.[2] Moreover, the Marcheses

will provide more than ample consideration for entry of the bar order against the noticed parties

as well as for approval of the Settlement.

More particularly, Source One, a disputed creditor, does not articulate what claims it may

have against the Marcheses that would be affected by the bar order; nor even Source One

demonstrated any harm or unfairness that may result from entry of the bar order or has raised this

as an argument. Finally, the bar order is very limited and will not bar any respective claims

against the Marcheses that are unrelated to the Trustee's Claims being released under the

Settlement.

## 2.    <u>Implications from Source One's Alleged Stay Violation</u>

Source One had generated millions of dollars of profits from Supreme and was frustrated

by the Debtor's bankruptcy filing, being no longer able to sustain such enormous profits. Not

surprisingly, Source One filed a Complaint objecting to the Debtor's discharge and several

actions in state court aimed at intimidating the Debtor by suing the Debtor's spouse, Elizandra

Aguiar ("**Elizandra**"). However, each lawsuit by Source One included injunctive relief that

caused an impediment to the Trustee's ability to administer an asset of the Estate. The first state

court action included a pre-judgment attachment that interfered with the Trustee's efforts to sell

---

[2] The creditors of the Debtor and Supreme are virtually the same constituent parties.

the Swampscott Property – which motion for attachment Source One withdrew upon demand

made by the Trustee.  The second action was equally problematic and thwarted the

consummation of the earlier court-approved settlement among the Trustee, Everett Co-operative

Bank (the "**Bank**") and Elizandra (the "**T-B-E Settlement**") (Doc. #210) regarding the

disposition of the Swampscott Property proceeds pursuant to the subsequent Sale Order of

December 23, 2016 (Doc. #240).  Source One had been made aware of the T-B-E Settlement by

receiving notice of the T-B-E Settlement; appearing at the hearing thereon and not advancing any

objection; and thereafter when cautioned not to take any action that would impact or frustrate the

implementation of the T-B-E Settlement.  Instead Source One's intentional actions knowingly

thwarted the T-B-E Settlement by filing an action seeking injunctive relief in the state court

while proceeds to be distributed pursuant to the T-B-E Settlement remained Estate Property and

preventing consummation of the T-B-E Settlement.  A copy of the communications between

counsel to Trustee and counsel to Source One relating specifically to the Trustee's concern that

any action by Source One effecting the disposition of the proceeds of the T-B-E Settlement is

annexed hereto collectively as Exhibit 1, and includes the following communication from the

Trustee to Source One.

> **Thanks Michael, but as you know what the Trustee cares about are the**
>
> **deliverables – which he has not completely received to date.  I think I told**
>
> **you that there had been a problem with the closing – which we were able to**
>
> **resolve but delayed everything for a day.  Hence, my only concern is whether**
>
> **the remaining deliverables (discharge judgment and releases) are released**
>
> **from escrow.  I think by Source One's filing on the 27th Source One may have**
>
> **violated the Order or stay; however, as I told EVERYONE, Marcheses and**

**Elizandra's lawyer included (as well as Source One pursuant to all of their requests for information) the Trustee's position is to ensure compliance or non-interference with the Settlement and sale Orders. The estate need not and should not expend time on these disputes EXCEPT if it the Trustee does not get the remaining deliverables, especially the release and discharge judgment.**

How cash still in the Estate that is neither a deposit nor escrow funds can be considered anything other than Estate Property at the time of Source One's injunction is the essence of why the Trustee contends that the judicial lien obtained by Source One that prevented the T-B-E Settlement from being consummated. Source One's lien is either void ab initio or not perfected if the court deems the proceeds earmarked for Elizandra were from the carve out provided by the Bank as the Bank did not receive notice of the motion for injunctive relief.

It is the Trustee's position that Source One's action in the State Court, when it had specific notice it would be purposely interfering to prevent the Trustee from receiving two essential deliverables of the T-B-E Settlement – one being the Debtor's Agreement for Judgment of the Trustee's pending section 727 discharge complaint (which would have rendered Source One's section 523 discharge complaint moot); the second being Elizandra's release of her claims against the Bank, did in fact prevent the Trustee from consummating the Settlement. Despite the series of e-mails and telephonic exchanges, Source One's action blocked the Trustee from deriving the entirety of benefits of the T-B-E Settlement and placed the Trustee in a very precarious position which has resulted in a further expenditure of otherwise unnecessary Estate resources. Yet, Source One now seeks to use that pre-judgment order to disrupt the present Settlement and leverage a recovery from its pending state court litigation against Elizandra.

Meanwhile, the validity of Source One's purported claim against Elizandra and the curious circumstances surrounding the alleged claim warrants circumspection given the affidavit of Elizandra claiming under oath that her name was forged. The lack of clarity is further troubling by the imprecise responses from Source One to inquiries of the Trustee from August 31, 2017, received by the Trustee on December 8, 2017 (after numerous follow-up efforts). The affidavit of Elizandra and alleged installment contract are annexed hereto collectively as Exhibit "B".

### 3.    Benefit to the Estate of the Settlement

Source One objects to there being any benefit from the Settlement for the Estate. Yet, Source One which had been far more involved with the Debtor and his prior business dealings than the Trustee, has not highlighted a single potential affirmative claim that the Trustee might have against the Marcheses (which claims, if any, are released in the Settlement). Source One also fails to acknowledge that all of the Marcheses' four claims against the Estate are being waived in their entirety and without any litigation which includes a fully collateralized mortgage claim (albeit disputed, but on regulatory grounds and not on grounds of lack of consideration, avoidability or perfection). The mortgage claim was filed in the sum of $253,000 and from that amount the Settlement generates a $68,000.00 cash benefit to the Estate. Though the $190,000 balance will be paid to the Bank, that amount was already earmarked to the Bank pursuant to the T-B-E Settlement in exchange for an $80,000.00 guaranteed net carve out for the Estate and payment of $146,544.00 in administrative claims, meaning the Estate generated $26,000.00 more from the T-B-E Settlement than if it had prevailed in defeating the Marcheses' secured claim in its entirety and without the attendant litigation fees and costs.[3]

---

[3] The Marcheses asserted a mortgage claim of $253,000.00 plus attorneys fees secured against the proceeds generated from the Trustee's earlier sale of the Everett Property.

Further, an <u>additional</u> $32,500.00 in cash will be paid to the Estate from the Settlement, plus the Estate receives potential additional proceeds from the Marchese litigation of the malpractice claim; the assignments from Elizandra as to similar claims, and claims to the Infiniti, and the Kawasaki.

Source One further argues that that the net effect of the Settlement may be one of neutrality; however if that is true it is solely because of the additional administrative claims that were necessitated to be incurred primarily because of Source One's actions in preventing the Trustee from consummating the T-B-E Settlement. Specifically, after the Trustee reached an independent resolution and a fully documented settlement with the Marcheses regarding the claim objection, the Bank sought, (and the parties to the Settlement were amenable to) seeking an omnibus resolution as an alternative means to consummate the T-B-E Settlement. Once again, though, Source One seeks to prevent that from occurring.

### 4.      Source One's Disputed Claim

Supreme was a mere conduit that generated enormous profits from installment contracts it "sold" to Source One for used cars sold by Supreme to a tight knit community of immigrants who bought cars from Supreme because of commonality and communication.

Source One purposefully manipulated the Debtor into generating profits for Source One from Supreme's operations, by placing the Debtor in a personal financial abyss to Source One without the means to escape the escalating economic burden without continuing to capitulate to Source One's directives. These included accepting Source One substantial inventory deliveries on Supreme's lot forcing Supreme to undertake enormous financial risks in selling cars to buyers who would not be capable of making installment payments to Source One thereby making

Supreme and the Debtor personally liable upon each and every default.[4] The interest, fees and charges from repossession and an auction process facilitated by Source One became a vicious cycle resulting in Supreme and the Debtor owing Source One hundreds of thousands of dollars while Source One benefitted from holding hundreds of thousands of dollars of Supreme's monies in what Source One called a "dealer reserve."

The Debtor's bankruptcy has not stopped Source One from efforts to retrieve the vehicles it had provided to the Debtor personally (which vehicles or proceeds the Trustee deems are Estate property) while also exploiting the Debtor for ending Source One's stream of excessive profits from Supreme. Source One took no action on these alleged claims and lawsuits it asserts it has against Elizandra until _after_ the Debtor sold his stock in Supreme which was two weeks prior to the Petition Date and not earlier when these alleged transactions were alleged to have defaulted. Annexed hereto as Exhibit "C" collectively are Source One's responses to the inquiries of the Trustee. The Trustee's concern, however, is that Source One's law suits each have had financial consequences to the Estate because they implicate the Estate's interest in property.

The Trustee has reviewed the proof of claim and purported loan documents of Source One noting a series of unconventional transactions, and inarticulate, incomplete or non-existent paperwork by Source One – a purported sophisticated used car buyer of installment contracts. However, despite the "unlimited guaranty" by the Debtor of Supreme's obligations, Source One also advanced personal loans directly to the Debtor and (it purports also to Elizandra), yet the joint tax returns of the Debtor and Elizandra showed modest income – in the $35,000.00 range –

---

[4] At least this is how the Trustee interprets the vagaries from the testimony from Source One's Rule 2004 Examination.

with no equity in any asset and no financial statements submitted to Source One that would

support any ability of the Debtor or Elizandra to repay any of these alleged personal loans.

The Trustee has made document requests and taken a 2004 examination of Source One's

principal under oath and is still investigating and attempting to connect-the-dots to what appears

to have been a very sophisticated scheme by Source One, which because of the Debtor's

bankruptcy has seen its profits cease; but that has not stopped Source One's actions.[5]

What has been revealed in the rule 2004 examination and document production is that

many of records involving the Debtor and Source One can only be deciphered through the

"interpretive commentary" of Source One's principal that seems counterintuitive as a

professional business model.  What remains further curious is why Source One advanced money,

at random, to the Debtor personally, including $50,000.00 for what Source One testified as the

down payment for the Debtor's home when Supreme and the Debtor still owed in excess of

$250,000.00 to Source One and the Debtor had no known ability to repay the "loan," as well as

the purported additional loans or advances by Source One for the Debtor's personal vehicles in

excess of $40,000.00 which the Debtor could also not afford to repay.  Later, Source One loaned

the Debtor another $50,000.00 which was used to pay off part of the earlier $50,000.00 loan,

leaving the Debtor still obligated to Source One for a $50,000 promissory note.

In particular, the lack of transparency regarding not only the Infiniti SUV but also a

certain Kawasaki motorcycle – a vehicle that had been purchased by the Debtor for his personal

use from other funds advanced to him by Source One which Source One now contends

constitutes Source One's collateral is similarly incomplete and suspect.

---

[5] Source One incorrectly in its Limited Objection states that the date upon which the Trustee can object to claims
has passed – which is factually inaccurate.

It is also curious as to how a certain Honda Civic for which Source One was earlier granted a pre-judgment lien against Elizandra and had been in Source One's possession found its way to creditor Auto Advance. Auto Advance during negotiation of its claim reported to the Trustee that a Honda Civic been dropped off by its consumer owner who could no longer make payments. Thereafter, the Trustee learned that the Honda Civic VIN# matched the Honda Civic Source One was "holding as collateral," and was owned by Elizandra. What interpretation could be possible other than that Source One sold the Honda belonging to Elizandra that it had been holding pursuant to the court ordered attachment, then purposely sought to "replace" the attachment the State Court had earlier granted with Elizandra's anticipated proceeds from the T-B-E Settlement?

Source One's motives should also be questioned in that upon information and belief, it has contacted at least two additional parties on the notice list presumably seeking to have them join in Source One's opposition or otherwise impede the Settlement.

DATED: January 22, 2018                    Respectfully submitted,

                                            JOHN O. DESMOND, CHAPTER 7 TRUSTEE OF
                                            THE ESTATE OF ROMULO A. RODRIGUES-
                                            AGUIAR
                                            By his counsel,

                                            */s/ Alan L. Braunstein*
                                            Alan L. Braunstein (BBO# 546042)
                                            RIEMER & BRAUNSTEIN LLP
                                            Three Center Plaza
                                            Boston, Massachusetts 02108
                                            Tel: (617) 523-9000
                                            Fax: (617) 880-3456
                                            abraunstein@riemerlaw.com

2248158.3

9

# EXHIBIT 1

**Subject:**          FW: In re Romulo Rodrigues-Aguiar, No 15-12640 - 12.28.16 Correspondence to J. Hayes

**From:** Alan L Braunstein
**Sent:** Thursday, December 29, 2016 3:50 PM
**To:** 'Grant, Michael T.' <Michael.Grant@leclairryan.com>
**Subject:** RE: In re Romulo Rodrigues-Aguiar, No 15-12640 - 12.28.16 Correspondence to J. Hayes

Thanks Michael, but as you know what the Trustee cares about are the deliverables – which he has not completely received to date. I think I told you that there had been a problem with the closing – which we were able to resolve but delayed everything for a day. Hence, my only concern is whether the remaining deliverables (discharge judgment and releases) are released from escrow. I think by Source One's filing on the 27th Source One may have violated the Order or stay; however, as I told EVERYONE, Marcheses and Elizandra's lawyer included (as well as Source One pusrusnt to all of their requests for information) the Trustee's position is to ensure compliance or non-interference with the Settlement and sale Orders. The estate need not and should not expend time on these disputes EXCEPT if it the Trustee does not get the remaining deliverables, especially the release and discharge judgment.

**From:** Grant, Michael T. [mailto:Michael.Grant@leclairryan.com]
**Sent:** Thursday, December 29, 2016 3:30 PM
**To:** Alan L Braunstein
**Subject:** In re Romulo Rodrigues-Aguiar, No 15-12640 - 12.28.16 Correspondence to J. Hayes

This message was sent securely using ZixCorp.

Alan,

Please see attached a courtesy copy of correspondence and enclosures that were sent to Attorney Hayes yesterday concerning the ex parte relief Source One Financial Corporation obtained against Elisandra Aguiar in an action pending in Hingham District Court.

Should you have any questions or wish to discuss, please do not hesitate to contact me.

Mike

**Michael T. Grant**
**Attorney at Law**
LeclairRyan
One International Place, Suite 1110
Boston, Massachusetts 02110
(617) 502-5728 Direct
(617) 502-5738 Fax
Michael.Grant@leclairryan.com
https://www.leclairryan.com

Please consider the environment before printing this email.

--------------------------------------------------------------------------
This message was secured by **ZixCorp**[R].

Alan L Braunstein
Riemer | Braunstein LLP
Three Center Plaza, Suite 600
Boston, Massachusetts 02108
Direct Dial: 617-880-3516
Direct Fax: 617-692-3516
ABraunstein@riemerlaw.com



RIEMER
BRAUNSTEIN

BOSTON   NEW YORK   CHICAGO   BURLINGTON

**Subject:**                         FW: In re Romulo Rodrigues-Aguiar, No 15-12640 - Sale of Swampscott Property

**From:** Alan L Braunstein
**Sent:** Tuesday, December 27, 2016 12:58 PM
**To:** 'Grant, Michael T.' <Michael.Grant@leclairryan.com>
**Subject:** RE: In re Romulo Rodrigues-Aguiar, No 15-12640 - Sale of Swampscott Property

There were several issues regarding the closing that we are working on now but I think it is being resolved.
They are supposed to go on record and call me when they do; however, it turned out that there is an apparent
issue with the plot plan that just arose.

Call me at your convenience and I can explain.

**From:** Grant, Michael T. [mailto:Michael.Grant@leclairryan.com]
**Sent:** Tuesday, December 27, 2016 12:51 PM
**To:** Alan L Braunstein
**Subject:** In re Romulo Rodrigues-Aguiar, No 15-12640 - Sale of Swampscott Property

> This message was sent securely using ZixCorp.

Alan,

Hope you had a great holiday weekend.

I received notice of the court's order allowing the trustee's motion to sell the Swampscott property. I believe the closing
is scheduled for today. Would you kindly advise once the sale has closed?

Thank you.

Mike

**Michael T. Grant**
**Attorney at Law**
LECLAIRRYAN
One International Place, Suite 1110
Boston, Massachusetts 02110
(617) 502-5728 Direct
(617) 502-5738 Fax
Michael.Grant@leclairryan.com
https://www.leclairryan.com

Please consider the environment before printing this email.

----------------------------------------------------------------------
This message was secured by **ZixCorp**(R).

**Subject:**          FW: In re Romulo Rodrigues-Aguiar, No 15-12640 - 12.28.16 Correspondence to J.
                Hayes

**From:** Alan L Braunstein
**Sent:** Thursday, December 29, 2016 4:05 PM
**To:** 'Grant, Michael T.' <Michael.Grant@leclairryan.com>
**Subject:** RE: In re Romulo Rodrigues-Aguiar, No 15-12640 - 12.28.16 Correspondence to J. Hayes

Thanks for your response. Let's see what I end up getting. I take no position unless I don't get what the Trustee
bargained for and have to incur further time and expenses.

**From:** Grant, Michael T. [mailto:Michael.Grant@leclairryan.com]
**Sent:** Thursday, December 29, 2016 3:57 PM
**To:** Alan L Braunstein
**Subject:** RE: In re Romulo Rodrigues-Aguiar, No 15-12640 - 12.28.16 Correspondence to J. Hayes

This message was sent securely using ZixCorp.

Alan,

Understood. Obviously Source One's position is that its motions for trustee process and attachment concerning
Elisandra Aguiar's carve out proceeds did not concern property of the estate and did not violate the automatic
stay. Likewise, the motions (and relief obtained thereby) did not affect the performance of any obligations
contemplated by the settlement agreement between the trustee and Elisandra. I imagine that the trustee would easily
prevail on a motion to enforce the settlement agreement in the event the Aguiars refuse to provide any of the
deliverables contemplated by the settlement agreement.

As always, I am happy to discuss further.

Mike

**Michael T. Grant**
**Attorney at Law**
LeClairRyan
One International Place, Suite 1110
Boston, Massachusetts 02110
(617) 502-5728 Direct
(617) 502-5738 Fax
Michael.Grant@leclairryan.com
https://www.leclairryan.com

Please consider the environment before printing this email.

# EXHIBIT 2

COMMONWEALTH OF MASSACHUSETTS

Plymouth, ss.                                    District Court Department
                                                 Hingham Division
                                                 Civil Action No. 1558CV000265

SOURCE ONE FINANCIAL CORP                    )
        Plaintiff                            )
                               ,             )
                                             )
v.                                           )
                                             )            January 10, 2017
ELIZANDRA  AGUIAR,                           )
        Defendant                            )
                                             )

## <u>Sworn Affidavit of Elizandra Oliveira Aguiar</u>

Now comes Elizandra Oliveira Aguiar and, having been duly sworn, deposes as follows:

1. My name is Elizandra Oliveira Aguiar.  I am over eighteen years of age.  I reside In Haines City, Florida.

2. I am the Defendant in the above referenced case.

3. I have carefully reviewed the Exhibit C that was attached to the Memorandum in Opposition to Plaintiff's Motion to Attach Property.  Exhibit C (attached) purports to contain my signature as the 10/01/2014 buyer of a 2011 InfinitiQX56-V8 SUV .

4. My signature does not appear anywhere on the attached contract form.  I did not sign the form.  I have never owned, registered or insured the Infiniti SUV named therein. I never authorized anyone to sign my name on the contract form.

I swear under the pains and penalties of perjury that the foregoing is a true and accurate statement freely made.

_____              _1_'_10_|_17_
Elizandra Oliveira Aguiar, Defendant                Date

52294

# SOURCE ONE FINANCIAL CORP.
183R Washington Street Norwell, MA 02061

**RETAIL INSTALLMENT SALE CONTRACT — SUBJECT TO STATE REGULATION — MOTOR VEHICLE**
Security Agreement — Conditional Sales

WEEKLY INSTALLMENTS

This contract is made and entered into the _____1_____ _____ day of _____ Oct _____ 20__14__, and between
the following described Seller and the following described Buyer:

| Name of Buyer(s) **Elixandra Aguiar** | Name of Seller **Supreme Cars, Inc.** |
|---|---|
| Residence or Place of Business **167 Kennedy Drive #711** | Place or Business or Name of Business of Seller **157 Ferry Street** |
| **Malden, MA 02140** | **Everett, MA 02149** |

The Seller named above agrees to sell and the Buyer(s) named above agrees to buy from the Seller, and grant to said Seller a security interest in one:

| NEW USED | MAKE OF MOTOR VEHICLE OR EQUIP. | NO. OF CYL. | YEAR | MODEL OR BODY TYPE | VEHICLE IDENTIFICATION NO. |
|---|---|---|---|---|---|
| Used | INFINITI | | 2011 | QX56-V8 Utility 4D | JN8AZ2NE8B9005976 |

together with all equipment used therewith and accessories therefor (all of which are herein after referred to as the "property").
The Buyer agrees to pay to the Seller the sum of __Thirty-Three Thousand Five Hundred Twenty-One Dollars And Ten Cents_____ Dollars
($__33,521.10__), such amount to be paid in __208__ consecutive weekly installments of $__161.17__ each, the first such installment to
be due on __Wed., Oct 8__ 20___, and the remaining installments on the same day of each succeeding week thereafter, until paid in full. For the
purposes of determining the above amounts, interest has been calculated at the rate of __12.00__ percent per annum (__12.00__% per annum).
This Contract may be prepaid in full at any time and Buyer shall be entitled to a prepayment refund of the unearned finance charge computed utilizing the Actuarial Method.
The Holder of this Contract may charge a late charge as disclosed below in the "Late Charge" paragraph.  ☐ N/A
The Holder shall charge $10.00 in the event any check or automatic withdrawal delivered to it as payment is returned unpaid.

| *☐ ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate | *☐ FINANCE CHARGE The dollar amount the credit will cost you. | ☐ Amount Financed The amount of credit provided to you or on your behalf | ☐ Total of Payments The amount you will have paid when you have made all scheduled payments. | ☐ Total Sale Price The total cost of your purchase on credit, including your down payment of $ .00 |
|---|---|---|---|---|
| 12.00 % | $ 6,922.10 | $ 26,599.00 | $ 33,521.10 | $ 33,521.10 |

**Payment Schedule**

| *☐ NUMBER OF PAYMENTS | *☐ AMOUNT OF PAYMENTS | ☐ WHEN PAYMENTS ARE DUE |
|---|---|---|
| 207 | 161.17 | Beginning on Wed, Oct 8, 2014 and each Wed of each week thereafter. |
| 1 | 158.91 | Final Payment |

**Late Charge:** If a payment is more than 15 days late, you may be charged $5.00 or 5% of that installment, whichever is less.  ☐ N/A
**Security:** You are giving us a security interest in the property being purchased.
**Prepayment:** If you pay off early, you will not have to pay a penalty and shall be entitled to a refund of a portion of the unearned finance charge.
Read your contract document for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.
* Items in contract, item is estimated.

**VSI Insurance:** You agree to purchase Vendor's Single Interest Insurance which protects the Seller's interest. You may obtain this insurance from anyone who is acceptable to us. If you purchase the insurance from the Seller, the cost will be $200.00 for the term of the loan.
**Liability Insurance** for bodily injury and property damage caused to others is not included.
**Property Insurance:** You are required to provide property insurance against fire and other hazards with respect to the collateral, loss payable to Holder, but you shall obtain such insurance through a broker or agent of your own choice

**NOTICE TO THE BUYER:** 1. Do not sign this contract if any of the spaces intended for the agreed terms to the extent of then available information are left blank. 2. You are entitled to an exact copy of the contract you signed. 3. Under the law, you have the following rights, among others — (a) to pay off in advance the full amount due and to obtain a partial refund of the finance charge; (b) to redeem the property if repossessed for a default; (c) to require, under certain conditions, a resale of the property if repossessed.

**Notice:** Any Holder of this Consumer Credit Contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof. Recovery hereunder by the debtor shall not exceed amounts paid by the debtor hereunder.

This Retail Installment Sale Contract is being assigned under the terms of the Recourse Assignment on the reverse side to Source One Financial Corp.

The name, address and telephone number where questions about billing errors may be directed is:
SOURCE ONE FINANCIAL CORP., 183R WASHINGTON ST. NORWELL, MA 02061, or 1-800-493-8484

Receipt is acknowledged of a completed copy of this contract and disclosure statement.

**ITEMIZATION OF AMOUNT FINANCED**

| | |
|---|---|
| 1  Cash Price (excluding Sales Tax) | $ 26,000.00 |
| 2  Down Payment Computation | |
|    Description of Trade-In | |
|    (a)   Gross Trade-In Allowance | $ 0.00 |
|    (b) − Pay-Off (if any) which is payable | |
|    (c)  Net Trade-In (a minus b) | $ 0.00 |
|    (d)  Cash Down Payment | $ 0.00 |
|    (e)  Total Down Payment (c plus d) | $ 0.00 |
|    (Insert only if a positive number; if a negative number insert 0 here and insert negative number in item 4 below) | |
| 3  Unpaid Balance of Cash Price (1 minus 2(e)) | $ 26,000.00 |
| 4  Price left to be paid off (4 2(c) above is a negative number, insert here as a positive number) | $ 0.00 |
| 5  Amount credited to your account with us (3 + 4) | $ 26,000.00 |
| 6  Amount paid to others on your behalf | |
|    (a) To Service Company* | $ 0.00 |
|    (b) To Public Officials | $ 0.00 |
|    (c) To VSI Insurance Co. | $ 200.00 |
|    (d) Documentation Fee To | $ 399.00 |
|    (e) | |
|    (f) | |
| 7  Subtotal (5 plus 6) | $ 26,599.00 |
| 8  Prepaid Finance Charges | $ 0.00 |
| 9  Amount Financed (7 minus 8) | $ 26,599.00 |
|    *We may retain a portion of this amount. | |

X _____ _____ (Buyer)

_____Supreme Cars, Inc._____
(Seller)
_____
(Authorized Signature)

_____ (Buyer)

White - Lender Copy   Yellow - File Copy   Pink - Seller Copy   Goldenrod - Buyer Copy

**NOTICE:** The terms of this agreement are contained on both sides of this page
©2014 Banker's Group Purchasing, Waltham, MA 02453   (Rev 07/14)-30205

# EXHIBIT 3

**From:** Grant, Michael T. [mailto:Michael.Grant@leclairryan.com]
**Sent:** Friday, December 08, 2017 12:37 PM
**To:** Alan L Braunstein <ABraunstein@riemerlaw.com>
**Subject:** RE: Aguiar

> This message was sent securely using ZixCorp.

Alan,

Sorry for the delayed response Source One's responses to your queries are embedded in your email below.

Mike


**Michael T. Grant**
**Attorney at Law**
LECLAIRRYAN
One International Place, Suite 1110
Boston, Massachusetts 02110
(617) 502-5728 Direct
(617) 502-5738 Fax
Michael.Grant@leclairryan.com
https://www.leclairryan.com

Please consider the environment before printing this email.


**From:** Alan L Braunstein
**Sent:** Thursday, August 31, 2017 5:43 PM
**To:** 'Grant, Michael T.'
**Subject:** Aguiar

Michael: Can you please send me the following:

1. The cancelled checks on each of the 50,000 loans Source One provided to the Debtor/Supreme Cars including the check Parson's testified to being used for Aguiars to purchase the home in Swampscott. See attached. Note that Source One does not agree with your summary of Mr. Parsons' testimony and provides the attached documents under a full reservation of rights.

2. The loan documents regarding the alleged Kawasaki Motorcycle. Source One has no loan documents concerning the Kawasaki motorcycle.  Supreme Cars offered the title to the Kawasaki to Source One as security in exchange for another title.

3. The filings made by Source One and the injunctive relief sought in Hingham District Court in December of 2016. Attached are the TRO and Attachment Order.

4. All communications- including emails to Supreme Cars and its new owners after the purported sale of Aguiar's interest in Supreme to the new buyer's including any demands for payments of Supreme's and the new owners obligations to Supreme.  There are no written communications between Source One and the new owners of Supreme Cars.

5. List of cars returned from other parties that Source One claimed belonged to Source One.    Source One needs clarification regarding the "other parties" this request is referring to as well as the specific time period to which this request pertains.

6. Location and loan documentation regarding a certain Infiniti motor vehicle believed to be that of Elizandra's that was allegedly taken from the Supreme lot (or repossessed), and all documents related to its repossession. Source One did not repossess this vehicle and does not know its location.  Ms. Aguiar never registered the vehicle after purchasing it from Supreme Cars.  Supreme Cars accepted funds from Source One to purchase the retail installment contract evidencing Ms. Aguiar's credit obligation, but then re-sold the vehicle to a third party.

Alan L Braunstein
Riemer | Braunstein LLP
Three Center Plaza, Suite 600
Boston, Massachusetts 02108
Direct Dial: 617-880-3516
Direct Fax: 617-692-3516
ABraunstein@riemerlaw.com



RIEMER
BRAUNSTEIN

BOSTON    NEW YORK    CHICAGO    BURLINGTON

This message was secured by Zix®.

---------------------------------------------------------------------
This message was secured by ZixCorp(R).

This message was secured by Zix®.

---------------------------------------------------------------------
This message was secured by ZixCorp(R).

**Subject:**                    FW: Aguiar


**From:** Alan L Braunstein
**Sent:** Tuesday, September 19, 2017 2:42 PM
**To:** 'Grant, Michael T.' <Michael.Grant@leclairryan.com>
**Subject:** RE: Aguiar

Michael: Can you let me know the status of this request? Additionally, could also you include the list of cars that Mr. Parsons stated Source One had repossessed after it learned of the purported sale, the Sale and finance agreements and the disposition of those cars (including those in category 5 below). Thanks.

**From:** Alan L Braunstein
**Sent:** Thursday, August 31, 2017 5:43 PM
**To:** 'Grant, Michael T.'
**Subject:** Aguiar

Michael: Can you please send me the following:

1. The cancelled checks on each of the 50,000 loans Source One provided to the Debtor/Supreme Cars including the check Parson's testified to being used for Aguiars to purchase the home in Swampscott.

2. The loan documents regarding the alleged Kawasaki Motorcycle.

3. The filings made by Source One and the injunctive relief sought in Hingham District Court in December of 2016.

4. All communications- including emails to Supreme Cars and its new owners after the purported sale of Aguiar's interest in Supreme to the new buyer's including any demands for payments of Supreme's and the new owners obligations to Supreme.

5. List of cars returned from other parties that Source One claimed belonged to Source One.

6. Location and loan documentation regarding a certain Infiniti motor vehicle believed to be that of Elizandra's that was allegedly taken from the Supreme lot (or repossessed), and all documents related to its repossession.


Alan L Braunstein
Riemer | Braunstein LLP
Three Center Plaza, Suite 600
Boston, Massachusetts 02108
Direct Dial: 617-880-3516
Direct Fax: 617-692-3516
ABraunstein@riemerlaw.com



RIEMER
BRAUNSTEIN

BOSTON   NEW YORK   CHICAGO   BURLINGTON

**Subject:**                    FW: Aguiar

**From:** Alan L Braunstein
**Sent:** Tuesday, November 28, 2017 3:39 PM
**To:** 'Grant, Michael T.' <Michael.Grant@leclairryan.com>
**Subject:** RE: Aguiar

I presume from your lack of response that you client is not willing to provide the requested documents/information.

**From:** Alan L Braunstein
**Sent:** Wednesday, September 27, 2017 5:13 PM
**To:** 'Grant, Michael T.' <Michael.Grant@leclairryan.com>
**Subject:** RE: Aguiar

Thanks.

**From:** Grant, Michael T. [mailto:Michael.Grant@leclairryan.com]
**Sent:** Wednesday, September 27, 2017 4:48 PM
**To:** Alan L Braunstein
**Subject:** RE: Aguiar

This message was sent securely using ZixCorp.

Hi Alan,

I am working with Source One to get you a substantive response, which I expect to send you by the end of the week.

Thanks,

Mike

**Michael T. Grant**
**Attorney at Law**
LeClairRyan
One International Place, Suite 1110
Boston, Massachusetts 02110
(617) 502-5728 Direct
(617) 502-5738 Fax
Michael.Grant@leclairryan.com
https://www.leclairryan.com

Please consider the environment before printing this email.

**From:** Alan L Braunstein [mailto:ABraunstein@riemerlaw.com]
**Sent:** Tuesday, September 19, 2017 2:43 PM
**To:** Grant, Michael T.
**Subject:** RE: Aguiar

1

This message was sent securely using Zix®

Michael: Can you let me know the status of this request? Additionally, could also you include the list of cars that Mr. Parsons stated Source One had repossessed after it learned of the purported sale, the Sale and finance agreements and the disposition of those cars (including those in category 5 below). Thanks.

**From:** Alan L Braunstein
**Sent:** Thursday, August 31, 2017 5:43 PM
**To:** 'Grant, Michael T.'
**Subject:** Aguiar

Michael: Can you please send me the following:

1. The cancelled checks on each of the 50,000 loans Source One provided to the Debtor/Supreme Cars including the check Parson's testified to being used for Aguiars to purchase the home in Swampscott.

2. The loan documents regarding the alleged Kawasaki Motorcycle.

3. The filings made by Source One and the injunctive relief sought in Hingham District Court in December of 2016.

4. All communications- including emails to Supreme Cars and its new owners after the purported sale of Aguiar's interest in Supreme to the new buyer's including any demands for payments of Supreme's and the new owners obligations to Supreme.

5. List of cars returned from other parties that Source One claimed belonged to Source One.

6. Location and loan documentation regarding a certain Infiniti motor vehicle believed to be that of Elizandra's that was allegedly taken from the Supreme lot (or repossessed), and all documents related to its repossession.


Alan L Braunstein
Riemer | Braunstein LLP
Three Center Plaza, Suite 600
Boston, Massachusetts 02108
Direct Dial: 617-880-3516
Direct Fax: 617-692-3516
ABraunstein@riemerlaw.com



RIEMER
BRAUNSTEIN

BOSTON   NEW YORK   CHICAGO   BURLINGTON


This message was secured by Zix®.


---------------------------------------------------------------------
This message was secured by ZixCorp(R).

2

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

In re:

ROMULO A. RODRIGUES-AGUIAR,

                          Debtor.

Chapter 7

Case No. 15-12640 (MSH)

## CERTIFICATE OF SERVICE

I, Alan L. Braunstein, with the law firm of Riemer & Braunstein LLP, hereby certify that I caused to be served on January 22, 2018, true and correct copy of the **RESPONSE OF TRUSTEE TO LIMITED OBJECTION OF SOURCE ONE FINANCIAL CORPORATION TO THE TRUSTEE'S MOTION TO APPROVE SETTLEMENT AGREEMENT PURSUANT TO FED. R. BANKR. P. 9019** by electronic notification (EN), where indicated, upon the following interested parties listed below:

Office of the United States Trustee
USTPRegion01.BO.ECF@USDOJ.GOV  (EN)

John O. Desmond
trustee@jdesmond.com, jdesmond@ecf.epiqsystems.com (EN)

James Hayes, Esq.
james.ace@comcast.net (EN)

David G. Baker
bkecf@bostonbankruptcy.org;ecf@bostonbankruptcy.org (EN)

Laura White Brandow, Esq.
lbrandow@meeb.com (EN)

Alexander L. Cataldo
cataldolaw@outlook.com, cataldoalexander1@gmail.com (EN)

Jason Giguere, Esq.
Richard T. Mulligan, Esq.
mabk@harmonlaw.com; jgiguere@ecf.courtdrive.com; rmulligan@ecf.courtdrive.com  (EN)

Michael Grant, Esq.
michael.grant@leclairryan.com (EN)

Anthony L. Gray, Esq.
tgray@pollackandflanders.com (EN)

Bill N. Jacob
bnjlaw@hotmail.com (EN)

James J. McNulty
jjm@jjmcnultylaw.com (EN)

Christopher S. Tolley
ctolley@phillips-angley.com; moe@phillips-angley.com; paper@mab.uscourts.gov (EN)


                                          /s/ Alan L. Braunstein
                                          Alan L. Braunstein (BBO #546042)
                                          Riemer & Braunstein LLP
                                          Three Center Plaza
                                          Boston, Massachusetts 02108
                                          (617)523-9000
                                          abraunstein@riemerlaw.com


2253438.1